UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>Michelle Renee Dos Santos,<br>SSN:  xxx-xx-0068,<br><br>     Debtor. | Case No. 15-11022-SBB<br>Chapter 7 |
| Jefferson County Department of Human Services,<br><br>     Plaintiff,<br>v.<br><br>Michelle Renee Dos Santos,<br><br>     Defendant. | Adv. Pro. No. 17-01041-JGR |

**MEMORANDUM OPINION AND ORDER**

     This case requires the bankruptcy court, as a court of equity, to determine whether the equities involved in this dispute favor the debtor or the creditor.

<u>Procedural Background</u>

     Debtor, represented by counsel, filed her petition under chapter 7 of the Bankruptcy Code on February 4, 2015.  After the case was fully administered, Debtor received her discharge, and the case was closed on July 8, 2015.

     Over two years after Debtor filed her petition, the Jefferson County Department of Human Services ("DHS") brought this adversary proceeding against her under 11 U.S.C. §§ 523(a)(2) and (a)(3)(B),[1] seeking to have a debt to DHS declared nondischargeable.  DHS relied on a 2012 finding of an administrative hearing officer that Debtor had provided false and misleading information in order to obtain benefits under the Colorado Food Assistance and Colorado Works[2] programs.

---

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

[2] DHS refers to this program both as "Colorado Works" and "TANF" (Temporary Assistance to Needy Families) throughout its pleadings.

In its complaint, filed on February 7, 2017, DHS acknowledged that an adversary proceeding generally must be brought no later than sixty days after the first date set for the meeting of creditors, which in this case would have been May 5, 2015. Fed R. Bankr. P. 4004(a). DHS alleged it had no notice or actual knowledge of the bankruptcy case until after that deadline had passed. DHS asserted Debtor did not list the debt on her schedules; therefore, the debt was nondischargeable under § 523(a)(3)(B). That section provides a discharge exception for debts "neither listed nor scheduled . . . with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . timely filing of a proof of claim and timely request for a determination of dischargeability . . . ." Therefore, DHS argued Debtor's debt was nondischargeable under § 523(a)(2) for fraud, and § 523(a)(3)(B) for failing to list DHS in her bankruptcy schedules.

At the trial, held March 28, 2018, Debtor did not contest the finding by the administrative hearing officer that she had made fraudulent misrepresentations on her applications for DHS assistance. Instead, Debtor argued DHS had notice of the bankruptcy early enough to bring a timely complaint for dischargeability. First, the Debtor argued DHS had notice via the Bankruptcy Court notice of mailing (docket #9), which went to the collection agency handling DHS's collection of Debtor's debt, and to an address for the State of Colorado (1575 Sherman Street, Denver, CO). Second, Debtor noted DHS admitted, in discovery, to having received actual notice of the bankruptcy on August 10, 2015, via an email from the Colorado Department of Human Services, yet, for unexplained reasons, waited a year and a half to bring the dischargeability complaint. Thus, Debtor contended, DHS was barred by the doctrine of laches from pursuing its claim.

Factual Background

Debtor received public assistance in the form of Temporary Assistance for Needy Families ("TANF"), Food Assistance, and Family Medicaid periodically between January 2006 and September 2010.[3] At some point, DHS determined Debtor had received benefits for which she was not eligible, and brought an administrative charge of "Intentional Program Violation" ("IPV") against her.

In December 2012, a hearing was held on the IPV, and Debtor participated by phone. DHS provided information showing Debtor failed to report income from various sources on her initial application for benefits, subsequent applications, monthly status reports, and recertification paperwork, and she did not report changes to her household composition relevant to her eligibility for benefits. The Hearing Officer concluded Debtor committed an IPV by providing false and misleading information. Specifically, the Hearing Officer found:

---

[3] Pl.'s Am. Compl., ¶ 7.

>Food Assistance and Colorado Works applications include advisements regarding penalties for making false statements and willful misrepresentation. Ms. Dos Santos signed these applications indicating she was aware of these requirements yet failed to report her income and household composition correctly. She has an overpayment of $19,840.44.[4]

Debtor was notified of the Hearing Officer's decision via US mail. She appealed the decision, which, according to DHS, was upheld in June 2013 by the Colorado Department of Human Services Office of Appeals.  DHS did not provide the Court with any documentation of that hearing.  DHS's discovery responses state: "Ms. Dos Santos did not appear at the hearing before an Administrative Law Judge with the Office of Appeals scheduled for April 16, 2013." [5]

Since the time of the IPV charge, DHS has withheld from Debtor's benefits to pay her Food Assistance overpayment.   According to DHS, the total amount Debtor currently owes is $16,357.44, comprised of "Medicaid Benefits in the amount of $9,499.44 and TANF benefits in the amount of $6,858.00."[6]

At trial, the Court heard testimony from Kirk Kross, an Account Clerk with DHS. Kross testified he sent Debtor a collection letter after the "hearing decision"[7] but he could not recall the date.  According to Kross, in the letter, he asked Debtor to contact him within two weeks, and advised if he did not hear from her, the debt would go to a collection agency.  Kross testified that after he did not hear from Debtor, he "forwarded" the debt to Credit Service Company ("CSC") for collection.  He testified this would have occurred approximately four weeks after the "hearing decision," and further testified that at that point, CSC was the entity in charge of collecting the debt.

When asked how he usually got notice of a bankruptcy, Mr. Kross responded, "usually from the collection agency or I get a copy of the notice in the mail."  In this case, he did not receive any notice from CSC.  He testified he learned of the bankruptcy when he received an email from the Colorado Department of Human Services.  He could not remember the date, but on cross-examination, he agreed the date was August 10, 2015.[8]  After he received the email, he "suspended the claim" and contacted the "manager of the investigations unit to see if they should go to the county attorney's office to file a motion to get it excluded from the bankruptcy." He and counsel had no explanation as to why DHS then waited a year and a half to bring the complaint against Debtor.

---

[4] Pl.'s Ex. 2.

[5] Ex. D, p. 5.

[6] Pl.'s Am. Compl. ¶ 10.

[7] It was not clear whether Kross was referring to the 2012 or 2013 decision.

[8] This date was provided in DHS's discovery responses, Ex. D, p. 4.

On cross-examination, Debtor's counsel asked Kross about entries on Debtor's bankruptcy petition.  Specifically, Kross was asked about the following amounts listed on Debtor's Schedule F as owing to "CREDIT SRVCE CO., PO Box 1120, Colorado Springs CO 80901-1120":

$2,079, account "9800, Open account 4-1-13" (Sch. F, p. 22).

$2,831, account "9801, Open account 4-1-13" (Sch. F., p. 21).

Kross agreed that these amounts matched the amounts in Exhibit 1 proffered by DHS, entitled "Social Services Recovery Ledger."  Specifically, Exhibit 1 listed the following amounts:

Owing in the category of TANF/Colo. Works:  $2,079 (Ex. 1, p. 1)

Owing in the category of TANF/Colo. Works: $2,831 (Ex. 1, p. 4).

Further, Kross was asked about the following entry on Debtor's Schedule F as owing to "Credit Service, PO Box 1120, Colorado Springs, CO 80901-1120":

$19,000, account listed as "ious" (Sch. F., p. 21).

Kross agreed that this amount roughly corresponded with the total amount originally due to DHS according to the Hearing Officer's decision.

When asked if he had any reason to believe that the entities listed ("CREDIT SRVCE CO" and "Credit Service") were not the same as CSC, he responded in the negative.

In response to cross-examination, Kross agreed that the Colorado Department of Human Services oversees all of the county Department of Human Service agencies, including DHS.  Kross testified the usual procedure is that DHS receives the notice of bankruptcy from the Colorado Department of Human Services.  He had no explanation for why there had been a delay in this particular case; however, he admitted that during his deposition, he had stated the procedure had been changed because the counties were not getting notices.  When presented with Ex. C, the website listing of the address for Colorado Department of Human Services, Kross agreed the address listed, at 1575 Sherman Street, Denver, CO, was correct.  Kross also agreed, upon review of Debtor's bankruptcy petition, that she had listed the "State of Colorado" at that address, on Schedule F, with a debt owing of $723.

After Kross's testimony, the Debtor moved for a directed verdict, asserting DHS had failed to meet its burden to show it did not have notice of the bankruptcy in time to bring a timely dischargeability complaint against Debtor.  Debtor argued CSC was an agent, either actual or apparent, for DHS at the time CSC took over collecting the debt, which was several weeks after the "hearing decision" according to Kross, and CSC had actual notice of the bankruptcy filing.  Debtor also contended DHS was put on notice by

4

Debtor's listing of the State of Colorado, at the Sherman Street address, because Kross testified the state did send notice of the bankruptcy to the county.

In response, DHS generally argued it was improper to find an agency relationship between the collection agency and DHS or between the State of Colorado and DHS. DHS contended the state did not collect on fraud cases, and that the state "takes no action on behalf of the county when it receives a bankruptcy petition other than forward the notification, one hopes, to the county." DHS also distinguished the fiduciary relationship between an attorney and a client from the non-fiduciary relationship between a collection agency and a client.

The Court deferred ruling on the directed verdict, and advised the parties it wished to hear the testimony of Debtor as it related to her alternative laches argument. Debtor then took the stand and testified she currently lives in Windsor, Colorado, in Weld County, and was living in that county, rather than Jefferson County, when she filed for bankruptcy in 2015. She stated it had taken "many years" to save money for filing the bankruptcy, and when she received her discharge in June 2015, she had a sense of relief to move forward and "do the right thing." Since her discharge, she hasn't had a late fee in three years. Then, when the DHS complaint was filed in February 2017, she felt like she was continuing a "ten-year prison sentence." She "thought this was over," but now she is "hopeless and stuck." She has two daughters, a large student loan debt, and has had trouble renewing her teaching license, apparently due to the DHS "lien." She also testified she had attempted suicide due to the hopeless feelings she experienced due to the DHS complaint.

Jurisdiction

The Court has jurisdiction over the parties and subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I).

Discussion

A. Notice

Debtor primarily relies on two cases to support her argument that DHS received notice of the bankruptcy to bring a timely dischargeability complaint: *In re Schicke*, 97 Fed. Appx. 249 (10th Cir. 2004), and *In re McNally*, 2017 WL 4082093 (10th Cir. BAP 2017).

In *Schicke*, the issue before the Tenth Circuit was whether a debtor complied with due process by serving notice of his bankruptcy petition on a judgment creditor's attorney in a state court action, rather than on the actual creditor. In *Schicke*, a state district court found Michael Schicke liable to Chanute Production Credit Association (CPCA) in the amount of $583,186.39 for the fraudulent receipt of loans. Twelve years later, Mr. Schicke filed a petition for relief under chapter 7 of the Bankruptcy Code, listing CPCA as a creditor holding an unsecured, nonpriority claim in the amount of the

5

judgment, but providing only the address of a law firm that had represented CPCA in the state court action. CPCA neither filed a proof of claim nor objected to discharge of the debt owed it by Mr. Schicke. In November 1996, the bankruptcy court entered a Discharge of Debtor and Final Decree. Nearly four years later, CPCA filed a Motion to Reopen in the bankruptcy court, claiming it received no Notice of Commencement of Case. The bankruptcy court denied the motion. The United States Bankruptcy Appellate Panel of the Tenth Circuit ("BAP") upheld the denial.

The Tenth Circuit affirmed, holding that debtor had provided sufficient notice to CPCA by listing the address of CPCA's state court attorney of record in debtor's bankruptcy filing. The Court reasoned that CPCA had been referred to by several names over the years, and the only address debtor had for CPCA was the address of the attorney he dealt with during the state court case. The Court noted it was CPCA's burden to show it did not receive sufficient notice, and CPCA had not called any attorney from the law firm to testify the firm did not receive notice of the bankruptcy proceedings. Therefore, the Court concluded:

> Under the facts of this case, we are persuaded that Mr. Schicke's serving notice on CPCA via its counsel at the only address CPCA had provided in the earlier fraud action was "reasonably calculated" under *Mullane*, 339 U.S. at 314, to provide CPCA with notice of Mr. Schicke's bankruptcy proceedings. Contrary to CPCA's assertion, the bankruptcy court's refusal to reopen Mr. Schicke's bankruptcy case was not an abuse of discretion.

*In re Schicke*, 97 Fed. Appx. at *3.

Similarly, in the case of *In re McNally*, the BAP held that a debtor's notice to a creditor's "current counsel" sufficiently accorded due process to the creditor. The BAP analyzed § 342(a) of the Bankruptcy Code, which provides: "there shall be given such notice as appropriate . . . of an order for relief in a case under this title." The BAP held "neither § 342(a) nor the due process clause requires the 'best' notice, only notice 'appropriate' and 'reasonably calculated' to apprise creditors of a case. *In re McNally*, at *6. The BAP concluded: "Generally, given a collection attorney's duties to a client, notice provided to the attorney is "reasonably calculated" to be relayed to the client."*Id.* [9]

Debtor relies on the *Schicke* and *McNally* cases to argue that in this case, Debtor's notice to the collection agency, CSC, was equivalent to the debtors' notices to collection attorneys in those cases. Additionally, Debtor contends the notice sent to the State of Colorado, at 1575 Sherman St., Denver, CO 80203, was sufficient to notify DHS of the bankruptcy, because this is the address of the Colorado Department of Human Services. (Ex. C). The Debtor alleges the State of Colorado had apparent authority to notify DHS of the bankruptcy.

DHS responds that a collection agency is not the same as a collection attorney, because a collection agency does not owe a fiduciary duty to a client in the same

---

[9] This decision is currently on appeal to the Tenth Circuit Court of Appeals.

6

manner that a collection attorney does.  Further, DHS observes that the notice that went to the State of Colorado listed the debt amount as an "unemployment overpayment" in the amount of $723.

The Supreme Court has held "the practicalities and peculiarities" of each case must be considered in assessing a due process challenge. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

The Court observes that in Debtor's Schedule F, she listed $643,898.77 in unsecured debt, held by over 100 unsecured creditors, including many collection agencies.  Evaluating the "practicalities and peculiarities" of this case, the Court cannot conclude that notice to each of these collection agencies serves as appropriate notice to each underlying creditor. Further, the Court concludes that notice to a collection agency is not the same as notice to an attorney.  In *McNally*, the BAP based its findings on "a collection attorney's duties to a client" and the agency relationship between the client and the attorney.

The Court believes Debtor's testimony that she used the list of collection agencies on her credit report in order to prepare her bankruptcy schedules.  Her counsel argues that because many debtors do so, it is reasonable to conclude that listing a collection agency on the bankruptcy schedules should provide notice to creditors who have delegated the collection function to that agency.  However, the Debtor was unable to cite any cases to support that argument, and the Court has been able to locate only a case finding the opposite.  *See In re Smith*, 217 B.R. 567 (Bankr. E. D. Ark. 1998) (notice a debtor provided to collection agency retained by creditor was not notice to creditor itself, for purpose of deciding whether court could allow creditor's untimely claim based on its lack of notice of debtor's bankruptcy case).

Additionally, the Court cannot hold that notice to the State of Colorado imputes notice to DHS. In this case, the debt was listed as an "unemployment overpayment."  If the debt had been described differently, or if Debtor had specifically listed the Colorado Department of Human Services, Debtor might have a better argument.  The Court cannot hold, however, that Debtor's notice to the State of Colorado for an unemployment overpayment was sufficient to put DHS on notice, either through its state department or county department.  *See United States v. Yale Transp. Corp.*, 184 F. Supp. 42, 47 (D. S.D.N.Y. 1960) ("notice of bankruptcy proceedings should be reasonably calculated to come to the attention of that branch of the Government familiar with the claims involved and which exercises functions with respect thereto."); *In re Golenburg*, 175 F. Supp. 415, 418 (D. Ohio 1959) (notice to one agency will not be imputed to another agency of the government).

B. Laches

The Court turns to Debtor's argument that DHS is barred from bringing the dischargeability complaint by the doctrine of laches, which she raised as an affirmative defense in her answer. Laches is an equitable defense that may apply when a plaintiff's lack of diligence in pursuing a claim causes harm to a defendant. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,122 (2002). The existence of laches depends upon the circumstances of the case and "is a question primarily addressed to the discretion of the trial court." *Biodiversity Conservation All. v. Jiron,* 762 F.3d 1036, 1090 (10th Cir. 2014).

The laches defense stems from the principle that "equity aids the vigilant and not those who slumber on their rights." *Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (quotations omitted). Courts apply the delay and prejudice elements with flexibility. As the Supreme Court noted, "[e]quity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced...." *Holmberg v. Armbrecht*, 327 U.S. 392, 396(1946) (quotations omitted).

In the case of *In re Jenkins*, 434 B.R. 604 (Bankr. D. Colo. 2010), this Court considered whether laches was a viable defense to an action under § 523(a)(3)(B). In that case, creditors, who were not listed on a debtor's schedules, waited six months after they received actual notice of the bankruptcy to bring an adversary proceeding against the debtor. The court held laches is available as a potential defense in a proceeding to except debt from discharge as one not scheduled or listed in time to permit the timely filing of a nondischargeability complaint, but, laches did not bar the complaint in that case because debtor failed to show prejudice resulting from creditors' delay.

Specifically, the court in *Jenkins* held that, although the delay in filing the complaint was unreasonable, debtor failed to make a particularized showing of prejudice arising from creditors' delay, as debtor would have had to face the same costs and fees and the same potential liability if the complaint had been filed before the claims-bar date, and there was no allegation that factors related to the debtor's ability to defend himself in the case, such as the availability of witnesses and evidence, had changed substantially due to the comparatively short passage of time.

In this case, Debtor argued she was prejudiced by DHS's delay of over a year and a half (after receiving notice of the bankruptcy on August 10, 2015) to bring a complaint against her. She testified the late filing affected her emotionally, because until the filing of the complaint, she thought she had been discharged of her debts and given a fresh start. The late filing of the complaint made her feel "hopeless" and apparently unable to renew her teaching license. She experienced hospital stays for depression and at one point was suicidal. She testified she "wants to do the right thing" but this proceeding "takes away any hope" she had with the bankruptcy. Debtor's

8

counsel also argued that, had the complaint been brought earlier, Debtor would have had more time to deal with and hopefully resolve it.

At the hearing in this matter, DHS and its counsel had no explanation for the delay in bringing its case against Debtor. Instead, DHS's response, in its entirely, to Debtor's laches argument, was as follows:

"Debtor has not shown prejudice because she would have had to face the same liability if the complaint had been filed before the bar date. She has not shown any factors such as the ability to defend herself. We are asking the Court to find that laches does not apply."

When analyzing the doctrine of laches, courts have recognized two types of prejudice: evidentiary prejudice and expectations-based prejudice. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died. A defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly. *Id.* Expectations-based prejudices are either other harms caused by the plaintiff's delay or other reasons why the suit being brought is no longer appropriate.[10]

The Court finds that DHS's delay was unreasonable, unexplained, and prejudicial to Debtor. At the time Debtor filed for bankruptcy, she was represented by counsel. She testified she told her counsel about the debt owed to DHS, but that she and counsel completed her schedules using her credit report. While counsel should have inquired further into the nature of the debt owed to the credit agencies, he apparently failed to do so.

By the time DHS brought its complaint against Debtor, she had received her discharge, her case was closed, and she no longer had counsel. After DHS brought its complaint, this Court granted Debtor several extensions of time to find counsel, which she eventually did. Had DHS timely filed its complaint after receiving actual notice of the bankruptcy in August 2015, Debtor likely still would have been in contact with her original counsel who could have worked with DHS at that time to work out a settlement of the claim. Instead, she was forced to find new counsel almost two years later to defend herself, due to DHS's unreasonable delay.

Debtor experienced expectations-based prejudice because she thought for almost two years that her bankruptcy filing had given her a fresh start and a chance to set things right. Instead, she was unexpectedly faced with defending herself against a government agency that presented no excuse whatsoever for its delay. She credibly testified the delay had caused her anguish to the point of being hospitalized for depression.

---

[10] An Nguyen, *It's About Time: Reconsidering Whether Laches Should Lie Against the Government*, 2015 Univ. Ill. Law. Rev. 2111, at 2122.

The Court recognizes that traditionally, "laches is a line of defense that usually may not be asserted against the United States." *United States v. New Mexico State Univ.*, 2018 WL 941702, at *3 (D. N.M. 2018) (holding that, despite that tradition, laches did apply against the EEOC as an agency enforcing a private, rather than public, right). However, this is not a per se rule, and courts have applied laches to public bodies when certain circumstances are present. *See, e.g., Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943) (laches may be asserted against United States as drawee of commercial paper).

Additionally, an emerging trend allows the defense of laches in suits brought by the government. *See Roberts v. Morton*, 549 F.2d 158, 163 (10th Cir. 1976) (noting some relaxation of strict rules regarding suits against the United States). For instance, in *N.L.R. B. v. P*I*E Nationwide*, 894 F.2d 887, 894 (7th Cir. 1990), Judge Richard Posner stated "government suits in equity are subject to the principles of equity," and "laches is generally, and we think correctly, assumed to be applicable to suits by government agencies as well as by private parties." *Id.*

Judge Posner later identified three situations where the doctrine of laches might justifiably be applied against the government, in *United States v. Admin. Enter., Inc.*, 46 F.3d 670 (7th Cir. 1995): 1) when the instance of laches is particularly egregious; 2) where there is no applicable statute of limitations; or 3) when the government "as a holder of commercial paper" is enforcing a private right. *Id.* at 672-73. *See also Cayuga Indian Nation v. Pataki*, 413 F.3d 266, 278 (2nd Cir. 2005) (following the Seventh Circuit and finding all three circumstances applied to subject the United States to the doctrine of laches).

Notably, DHS never raised the argument that laches could not apply to a government agency. In the absence of such argument, the Court weighs the relevant factors in Debtor's favor. First, the Court finds the delay was egregious, as it drove Debtor to despair and was completely unexplained. Second, as the court in the *Jenkins* case noted, there is no statutory time limit for filing actions under § 523(a)(3)(B); thus, laches is an appropriate defense. *Jenkins*, 434 B.R. at 609. Third, while DHS does serve a public function, in this particular case DHS was acting more akin to a collections agency in attempting to recoup over $16,000 from Debtor, which amount was largely unexplained.[11] Thus, all three situations apply here.

This Court, as a court of equity, views this case as one justifying the application of laches to DHS. "Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice

---

[11] In DHS's Ex. 1, the largest portion of this debt ($11,042.93) is listed in the DHS ledger as "Medicaid" benefits. The record shows the hearing officer found Debtor had made misrepresentations on her applications for "the Food Assistance and Colorado Works programs." Ex. 2. It was unexplained whether, and how, DHS could collect an overpayment of Medicaid benefits based on the hearing officer's decision.

would be defeated but for its intervention." *Times-Mirror Co. v. Super. Ct.*, 44 P.2d 547, 557 (Cal. 1935).

ACCORDINGLY, IT IS HEREBY ORDERED that judgment shall enter in favor of Defendant Michelle Renee Dos Santos and against Plaintiff DHS, and this adversary proceeding is DISMISSED.

DATED this 31st day of May, 2018.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge